**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 15a0825n.06**

**No. 15-1120**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Dec 17, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SHENIKA PARCHMAN, individually and as personal representative of the ESTATE OF BABY BOY PARCHMAN, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| CITY OF TAYLOR and OFFICER MICHAEL TAYLOR, | ) ) ) | |
| Defendants-Appellees. | ) | |

**BEFORE:** **BATCHELDER, McKEAGUE, and STRANCH, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Police arrested Shenika Parchman along with three other women outside a Meijer grocery store in Taylor, Michigan, for shoplifting. Parchman was nine months pregnant at the time. The record indicates that she visited the hospital one week later. Nothing appeared to be amiss at that time. But the next day—eight days after the arrest—the child she was carrying, a boy, died in utero as the result of a placental abruption.[1]

Parchman sued the City of Taylor and Officer Michael Taylor under 18 U.S.C. § 1983 and Michigan law, alleging that the child she was carrying died as a result of her rough treatment

---

[1] A placental abruption occurs "[i]f the placenta peels away from the inner wall of the uterus before delivery—either partially or completely." *Placental Abruption*, Mayo Clinic (2015), http://www.mayoclinic.org/diseases-conditions/placental-abruption/basics/definition/con-20024292.

during the arrest. The district court granted summary judgment in favor of Defendants, and Parchman filed this timely appeal. We affirm.

Officer Taylor is entitled to summary judgment because no reasonable juror looking at the evidence in the record could conclude that he was responsible for Parchman's placental abruption. Officer Taylor testified at his deposition that his involvement in the arrest was limited to speaking with the store's Loss Prevention Associate, telling the other officers at the scene to apprehend Parchman and the three other suspects, issuing citations to suspects, and writing the police report. This version of events is reinforced by Parchman's own account. Most damning is the following exchange at her deposition:

> Q: Could you recognize the officer that you claim handcuffed you on the date of the incident?
>
> A: Yes.
>
> Q. Okay. That's not the officer sitting next to me, is it?[2]
>
> A: I don't know.
>
> Q: You don't know? Do you know what this individual sitting next to me did, if anything, at Meijer's on the date of the incident?
>
> A: I don't—I don't know.
>
> Q: Do you know if you had any contact with him or not?
>
> A: I don't—I don't know. No.
>
> Q: He's certainly not chubby, is he?
>
> A: No.
>
> Q: He's a very slender gentleman, correct?
>
> A: Yes.

---

[2] There is no dispute that the officer sitting next to counsel at this deposition was Officer Taylor.

Q: Okay. And you described the officer you had contact with as being a "chubby" individual, correct?

A: Yes.

Q: And this individual doesn't look like the officer you described to me whatsoever. Would you agree with that?

A: Yes.

While Parchman's attorney contended at oral argument that she in fact *did* provide a solid identification of Taylor at the end of her deposition, he was unable to point to anything in the record to support this, and we have found nothing.

The best evidence Parchman has is testimony from two officers that the arresting officer is "typically" or "usually" the one who fills out the police report; but both also testified that they had no knowledge of whether Taylor had in fact arrested Parchman. And one of the officers explained that it was not unusual for an officer other than the arresting officer to fill out the form. This evidence shows at most that it was somewhat atypical for a non-arresting officer to fill out the police report. It is not enough to create a genuine issue of material fact.

No reasonable juror looking at this evidence could conclude that Officer Taylor in any way harmed Parchman or her unborn child, much less that he violated their constitutional rights. Summary judgment is therefore mandated. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). As for the City's liability, this issue is nowhere discussed in Parchman's briefs, and it is therefore waived. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006). For the foregoing reasons, we affirm the judgment of the district court.